1  DAN SIEGEL, SBN 56400
2  ANNE BUTTERFIELD WEILLS, SBN 139845
   EMILYROSE JOHNS, SBN 294319
3  SIEGEL, YEE, BRUNNER & MEHTA
   475 14th Street, Suite 500
4  Oakland, California 94612
5  Telephone: (510) 839-1200
   Facsimile: (510) 444-6698
6
   Attorneys for Plaintiffs
7  STACY ROJAS, IVETT AYESTAS,
   and SARAH LARA
8

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY ROJAS, IVETT AYESTAS, and SARAH LARA,<br><br>Plaintiffs,<br><br>vs.<br><br>RALPH DIAZ, Secretary, CDCR; JANEL ESPINOZA, Warden, California Central Women's Facility; LIEUTENANT TIMOTHY TEGTMEYER, individually and in his official capacity as an officer at Central California Women's Facility; SERGEANT JASON COLLIER, individually and in his official capacity as an officer at Central California Women's Facility; OFFICER MIGUEL HERRERA, individually and in his official capacity as an officer at Central California Women's Facility; OFFICER STEVEN REYNOLDS, individually and in his official capacity as an officer at Central California Women's Facility; OFFICER ISRAEL TREVINO, individually and in his official capacity as an officer at Central California Women's Facility,<br><br>Defendants. | Case No. 1:17-CV-01514-DAD-JLT<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**Demand for Jury Trial** |

---

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 1

## I. INTRODUCTION

1. Plaintiffs Stacy Rojas, Ivett Ayestas, and Sarah Lara were at one time incarcerated at Central California Women's Facility ("CCWF"), a state prison operated by California Department of Corrections and Rehabilitation ("CDCR"). While housed at CCWF on or about November 11, 2015, Plaintiffs Rojas, Ayestas, and Lara were viciously assaulted and tormented without cause or justification, resulting in physical and emotional injury. They were denied medical treatment for their injuries and prevented from filing grievances about the assault they experienced.

2. Plaintiffs are all gender non-conforming and/or queer individuals, and are all survivors of sexual trauma and violence.

3. There is a pervasive culture of intolerance of gender non-conforming and queer prisoners at Central California Women's Facility that has manifested in consistent verbal harassment and physical abuse against plaintiffs and others. Plaintiffs who remain incarcerated regularly experience sexual harassment and threats of sexual violence from corrections officers.

4. In August of 2016, the non-profit law firm Prison Law Office made public a report that was developed pursuant to its monitoring requirements in the matter *Armstrong et al. v. Brown et al.* No. CV-94-02307-CW.[1] Among other findings, the report concluded that:

    a. Prisoners face retaliation for using the appeals process to report a problem, to request assistance, or to ask for help or protection.
    b. Officers use excessive and/or unnecessary force on prisoners.
    c. Staff physically and sexually abuse, harass, and threaten prisoners.
    d. Custody staff perpetuate a culture of bigotry, sexual harassment and casual misogyny addressing women

---

[1] Central California Women's Facility (CCWF) Report by the Prison Law Office (Aug. 19, 2016), *available at* http://prisonlaw.com/wp-content/uploads/2016/08/16.08.18-Prison-Law-Office-report-on-CCWF.pdf.

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 2

not by their names, but as "bitches," "hos," or "whores," or with racial epithets.

5. The culture exists in part due to defendants Diaz and defendant Espinoza's failure to enact and enforce the federal regulations of the Prison Rape Elimination Act ("PREA") that, among other things, require officers to refrain from sexually abusive and harassing behavior; their failure to train officers to refrain from violations of the United States Constitution, the Bane Act (Cal. Civ. Code §52.1), the Ralph Act, (Cal. Civ. Code § 51.7) and their failure to discipline officers when they engage in such behavior.

6. Plaintiffs continue to experience the constitutional violations complained of herein and fear reprisal for reporting or attempting to report such behavior. Without remedy in the form of injunctive and declaratory relief against defendant Diaz and defendant Espinoza, these unconstitutional practices will continue and plaintiffs will continue to suffer.

## II. JURISDICTION AND VENUE

7. Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

8. This Court has jurisdiction for claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331, 1343 and the Declaratory Judgment Act, 28 U.S.C §§ 2201, 2202.

9. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims brought by plaintiffs and the class have occurred in Madera County in this District.

## III. PARTIES

10. Plaintiff STACY ROJAS is a gender non-conforming former prisoner of California Department of Corrections and Rehabilitation. While in custody and control of CDCR, plaintiff Rojas was subject to countless instances of verbal harassment by

1  guards at CCWF because of their[2] gender identity. Rojas was brutally attacked by guards
2  on November 11, 2015, for demanding to make a complaint to internal prison
3  investigators concerning verbal harassment from prison guards. Rojas was confined for
4  nearly twelve hours in a small programming cage not meant for punitive confinement
5  and tormented during that time. Rojas was denied medical attention and access to
6  grievances to complain about any of the conduct they suffered.  At all times relevant to
7  this suit, plaintiff Rojas was imprisoned at California Central Women's Facility.

8       11.    Plaintiff IVETT AYESTAS is a prisoner under the custody and control of
9  California Department of Corrections and Rehabilitation. Plaintiff Ayestas is currently
10 imprisoned at California Central Women's Facility, where she is subject to verbal
11 harassment by guards because of her sexual orientation and former sexual victimization.
12 Ayestas was brutally tortured by guards at CCWF on November 11, 2015, after she
13 implied to guards that she would make a complaint against them concerning the use of
14 excessive force she witnessed. Ayestas was confined for nearly twelve hours in a small
15 programming cage not meant for punitive confinement and tormented during that time.
16 Ayestas was denied medical attention, and although permitted to file a grievance, she
17 was never provided information on the outcome of her grievance.

18      12.    Plaintiff SARAH LARA is a prisoner under the custody and control of
19 California Department of Corrections and Rehabilitation.  Plaintiff Lara is currently
20 imprisoned at California Central Women's Facility, where she is subject to verbal
21 harassment by guards because of her sexual orientation and former sexual victimization.
22 Lara was brutally attacked by guards at CCWF on November 11, 2015, for telling guards
23 not to speak to her with derogatory tone or language. Lara was confined for nearly
24 twelve hours in a small programming cage not meant for punitive confinement and
25 tormented during that time. Lara was denied medical attention and access to grievances
26 to complain about any of the conduct she suffered.

---

[2] Stacy Rojas prefers "they/their" pronouns and will be referred to using they or their in this complaint.

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 4

13. Defendant RALPH DIAZ is the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). As Secretary, defendant Diaz is responsible for ensuring that the CDCR complies with all state and federal laws, and that the civil and legal rights of individuals confined by CDCR are upheld. In failing to fulfill this responsibility, he has directly and proximately caused unlawful, unconstitutional, and inhumane treatment of prisoners of CDCR. Defendant Diaz is sued in his official capacity for prospective injunctive relief and declaratory relief.

14. Defendant JANEL ESPINOZA is the current Warden of Central California Women's Facility. As Warden, defendant Espinoza is responsible for ensuring that CCWF complies with all state and federal laws, and that the civil and legal rights of individuals confined at CCWF are upheld. In failing to fulfill this responsibility, she has directly and proximately caused unlawful, unconstitutional, and inhumane treatment of prisoners of CCWF. At all times relevant to this suit, she was acting under color of law and within the scope of his employment. Defendant Espinoza is sued in her official capacity for prospective injunctive relief and declaratory relief.

15. Defendant LIEUTENANT TIMOTHY TEGTMEYER is employed by the CDCR at CCWF and was personally involved in the events described herein. At all times relevant to this suit, he was acting under color of law and within the scope of his employment. He is sued individually for damages and in his official capacity as an officer for CDCR for prospective injunctive relief and declaratory relief.

16. Defendant SERGEANT JASON COLLIER is employed by the CDCR at CCWF and was personally involved in the events described herein. At all times relevant to this suit, he was acting under color of law and within the scope of his employment. He is sued individually for damages and in his official capacity as an officer for CDCR for prospective injunctive relief and declaratory relief.

17. Defendant OFFICER MIGUEL HERRERA is employed by the CDCR at CCWF and was personally involved in the events described herein. At all times relevant to this suit, he was acting under color of law and within the scope of his employment.

He is sued individually for damages and in his official capacity as an officer for CDCR for prospective injunctive relief and declaratory relief.

18. Defendant OFFICER STEVEN REYNOLDS is employed by the CDCR at CCWF and was personally involved in the events described herein. At all times relevant to this suit, he was acting under color of law and within the scope of his employment. He is sued individually for damages and in his official capacity as an officer for CDCR for prospective injunctive relief and declaratory relief.

19. Defendant OFFICER ISRAEL TREVINO is employed by the CDCR at CCWF and was personally involved in the events described herein. At all times relevant to this suit, he was acting under color of law and within the scope of his employment. He is sued individually for damages and in his official capacity as an officer for CDCR for prospective injunctive relief and declaratory relief.

### IV. FACTUAL ALLEGATIONS

20. On or about November 7, 2015, plaintiff Stacy Rojas was performing programming duties near the guard's desk in Unit 510 at CCWF.

21. Rojas asked Officer Miguel Herrera at the guard's desk to unlock a door so that they could use the bathroom. In response, and without provocation, the guard called Rojas a "stupid hoe."

22. Rojas, Ayestas and Lara were called "hoe," "bitch," "slut" and other degrading and sexually charged epithets by guards on a daily basis due to their perceived gender identity and sexual orientation. Rojas was also referred to as "it" because they are masculine-presenting. These epithets are used instead of calling plaintiffs by their names and have the desired effect of degrading, belittling, humiliating and terrifying plaintiffs.

23. Tiring of such treatment and knowing that sexual harassment should not be tolerated by the officers' superiors, Rojas told Officer Herrera that his and other guards' similar comments, which had persisted for years, had been documented in

recent weeks and that Rojas had evidence of the abuse that they planned to submit to the Investigative Services Unit ("ISU") to substantiate claims of abuse.

24. Rojas then immediately demanded to speak to the ISU to report the incidents of verbal abuse to which they, Ayestas, and Lara had been so long subjected. Rojas said that they wanted to turn over the evidence of verbal sexual harassment and abuse to ISU.

25. Despite Rojas's request, the guards either denied or neglected to contact ISU.

26. On November 11, 2015, at or around 2 p.m., guards in their housing unit instituted a unit and yard recall, which is an alarm that demands that all prisoners return to their assigned housing. November 11, 2015, was Veterans' Day, a federal holiday, and on holidays, prisoners are allowed to stay in the yard for extended hours. Therefore, on November 11, prisoners expected not to be recalled from the yard until 3 p.m.

27. A unit and yard recall is used to conduct a count and dorm check. Typically in response to a recall, prisoners are expected to return to the doors of their individual cells and wait for the cells to be unlocked by guards after the prisoners are counted. On this day, the recall was used to force Rojas and their cellmates, which included Ayestas and Lara, to return to their dormitory cell.

28. Rojas, Ayestas, and Lara complied with the unit and yard recall and returned to their cell, which was unlocked.

29. Once there, Ayestas asked and received permission from a guard to retrieve her laundry that was in the laundry room, not far from her cell.

30. After Rojas returned to their cell, Sergeant Jason Collier ordered Rojas, Lara and their roommates out of the cell and had them stand in the day room while they and other unit staff conducted a destructive search of the cell that Rojas, Ayestas, and Lara shared. Sergeant Collier oversaw the operation and made comments to Rojas and

Lara that led them to believe that officers were searching for the evidence of officer misconduct to which that Rojas had alluded several days earlier.

31. As the nine to 10 Corrections Officers including Sergeant Collier, Officer Herrera, Officer Steven Reynolds, and Officer Israel Trevino rifled through the belongings of the six residents of the dormitory cell, Rojas again asked Sergeant Collier if they could speak to ISU. Sergeant Collier continued to either deny or neglect plaintiff Rojas' requests.

32. Although Rojas and their roommates stayed out of the officers' way, Rojas continued to ask to speak to ISU.

33. In response, Sergeant Collier began shoving Rojas around.

34. Suddenly and with no warning, Sergeant Collier and other unknown officers violently slammed Rojas to the ground and placed handcuffs on them.

35. As plaintiff Ayestas exited the laundry room, she was commanded to position herself on the ground face down where she was placed in handcuffs by Officer Reynolds.

36. Plaintiff Lara began taking contemporaneous notes of the guards' conduct.

37. With Rojas incapacitated on the ground and in handcuffs, Sergeant Collier performed what is known as a "boot-burn" on Rojas's back. A "boot-burn" is conducted by stomping forcefully onto a person's back and then dragging one's boot in a grating manner against the skin to create a burning sensation. Sergeant Collier did this for no other reason than to unjustifiably punish and cause pain to Rojas in retaliation for their complaints. As a result of the "boot-burn," Rojas received severe bruising and lacerations on their back.

38. Officer Reynolds took Rojas and Ayestas to the Program Office and placed them in isolation cages, which are typically used for brief holding and for programming. The cages do not have a seat and do not provide much room to move.

39. The Program Office is a standalone building situated between the C-yard and the D-yard. There is a C-side and a D-side, which are separate but share restroom facilities.

40. Officer Trevino separated Rojas and Ayestas, placing Rojas in the D unit program office and Ayestas in the C unit program office. Officer Reynolds harassed Rojas while they were in the cage, calling them a "stupid bitch." Officers Reynolds and Trevino stood in front of the cage and taunted Rojas, asking Rojas if they thought of themselves as a man and telling Rojas they would show Rojas how men work, something Rojas understood as a threat of violence.

41. After Rojas and Ayestas were removed, Lara, still in the Unit, requested a grievance form so that she could lodge a formal complaint. The guard told her that they would not provide access to the grievance form and told her to go sit down.

42. When Lara insisted that she be provided the form, Sergeant Collier responded by yelling at her to "sit the fuck down."

43. Lara was startled by his tone and told him so.

44. In response, and for the sole purpose of inflicting pain, Sergeant Collier grabbed Lara by the wrist and bent it back. He then ordered Officer Herrera to put handcuffs on Lara. Officer Herrera slammed plaintiff Lara on the ground and applied pressure with his foot or knee to her back. He handcuffed her. The resulting pressure from the handcuffs was very tight and caused her pain.

45. While plaintiff Lara lay face down on the ground with Officer Herrera applying pressure on her back, Sergeant Collier approached plaintiff Lara's right side, where the pressure applied by Officer Herrera had caused her right breast to protrude. Sergeant Collier intentionally stepped on her exposed breast and applied so much pressure that plaintiff Lara was left with visible bruises. Plaintiff Lara cried out in pain, pleading with them that she was complying and imploring them to stop standing on her back and breast. Despite her cries to Sergeant Collier that he was on her breast, Sergeant Collier did not remove his foot or lessen his pressure.

46. As Lara still lay flat on her stomach, Sergeant Collier grabbed her by the handcuffed arms and yanked upwards, wrenching her shoulders. He again did this for the sole purpose of causing unnecessary pain. She again cried out in pain.

47. Officer Herrera then took Lara to the Program Office.

48. When Lara was taken by Officers Herrera and Officer Allyson Guinn to the Program Office, she was first forced into the inmate restroom for a strip-search. She was un-handcuffed for a brief period so that Officer Guinn could perform the strip-search.

49. Though Officer Guinn primarily performed the strip-search, the search was conducted with the door open and in clear view of Officer Herrera, who was able to observe Lara's nude body.

50. During the search, the Officer Guinn located and shredded the notes Lara had taken regarding the assault on Rojas.

51. Lara was menstruating at the time and requested the opportunity to change her tampon. Officer Guinn did not permit this. Instead, she disposed of Lara's clothes and gave her a muumuu to wear. The muumuu was so large that it slipped off her shoulder and exposed her breast intermittently throughout the nearly 12 hours of isolation that followed.

52. Lara is the victim of severe domestic violence, and she has graphic scarring as a result. The oversized muumuu exposed her scarring as well. Once in the muumuu, Lara was re-handcuffed and put in an isolation cage on the D side of the Program Office.

53. The isolation cages in the Program Office are designed to allow high-risk prisoners to receive services and therapy in a group setting without being shackled. While they are small, the cages are meant to facilitate group participation and some freedom of movement while doing so.

54. The isolation cages in the Program Office are backed up to a wall and face the sergeant's office. People in these cages can only see the office door in front of them, and into the cage to the side of them.

55. While in the isolation cages of the Program Office, it is not possible to see everything in the hallways or restrooms of the Program Office. However, it is possible to hear everything. This includes actions going on in the restrooms and in the opposite side of the Program Office.

56. Rojas, Lara, and Ayestas were kept in the cramped isolation cages for approximately 12 hours. They were never released for use of the bathroom, medical treatment, or access to food or water. Lara and Ayestas were handcuffed the entire time.

57. Contrary to policy, Rojas, Lara, and Ayestas were not checked on in the regular intervals required for prisoners in isolation cages.

58. With no access to a bathroom, Rojas, Lara, and Ayestas were reduced to soiling themselves when they could no longer hold their urine.

59. During their confinement, corrections officers tormented and taunted Rojas, Lara, and Ayestas.

60. At or around 11 p.m., Ayestas was taken into the bathroom by a guard. While in the bathroom, she remained in full view of Lieutenant Timothy Tegtmeyer, a male officer. She was ordered to undress and put on a muumuu, which would have caused her to expose herself to Lieutenant Tegtmeyer. When she asked for privacy, Lieutenant Tegtmeyer threatened to put her in Administrative Segregation if she did not undress in front of him.

61. When Ayestas, the known victim of sexual abuse, insisted that she not be forced to change in view of male officers, Lieutenant Tegtmeyer grabbed her by the shoulders and forced her up against the wall. Sergeant Collier then grabbed her arm and slammed her to the floor. She hit her face on the toilet when she fell. Sergeant Collier placed his knee into plaintiff Ayestas' back and applied his weight, pinning her to the floor.

62. Lieutenant Tegtmeyer held her legs and Sergeant Collier held her arms. They began removing her clothes.

63. While plaintiff Ayestas was so pinned, Officer Trevino retrieved a pair of scissors and Lieutenant Tegtmeyer and Sergeant Collier proceeded to cut off Ayestas' clothing. Sergeant Collier repeatedly called her a "bitch" during the ordeal.

64. Ayestas began screaming and crying.

65. Rojas and Lara overheard the commotion and screaming, and they began begging the officers to stop hurting Ayestas. The guards did not stop.

66. Traumatized by the commotion and unable to bear the cries of their dear friend, Rojas tied a shoelace around their neck and hanged themselves.

67. Lara, who could hear Ayestas' screams, and who witnessed Rojas' traumatic response, began banging loudly on her cage and screaming that Rojas was trying to hang themselves. The officers in the restroom did not respond to her cries for help.

68. An uninvolved officer, who happened to be passing through the Program Office at the time, was drawn to Lara's screams and responded. The officer opened Rojas' cage, and lifted them up and out of the cage.

69. At this time, officers performed a search of Rojas, taking their socks and shoes, and placed Rojas in handcuffs. They dressed Rojas in a thin smock and a pair of pants, with no layers, underwear, or bra underneath.

70. Rather than retrieve medical attention for Rojas, guards placed Rojas back in the holding cell.

71. After several hours, Officers Trevino and Reynolds took Rojas and Lara outside in temperatures below 50 degrees Fahrenheit. Rojas was still wearing the single layer of clothing, wet from having soiled themselves, and no socks or shoes. Lara was clad only in a muumuu, a pair of socks, and sneakers. The officers' actions served no penological purpose and appeared to be for the sole purpose of further tormenting Rojas and Lara.

72. Lara's muumuu kept falling down, exposing her breast. Officers Trevino and Reynolds watched as her oversized muumuu caused her breast to be exposed again

and again, and did nothing to assist Lara in covering herself or maintaining coverage. As both Rojas and Lara were handcuffed, Lara's only recourse to cover herself was to ask Rojas to use their teeth to pull up Lara's falling muumuu. Rojas and Lara were shivering from the cold and exposure.

73. Officers Trevino and Reynolds stood with Rojas and Lara and sexually harassed them. The officers verbally compared the sizes of their genitalia, causing plaintiffs Rojas and Lara to fear further sexual abuse.

74. After 30 to 60 minutes, Rojas and Lara were returned to the cages. They remained in the isolation cages until 1:30 a.m. or 2 a.m.

75. At approximately 2 a.m., Rojas and Lara were released to Administrative Segregation staff and taken to the prison's Crisis Center by van. Ayestas was already there. They were finally un-cuffed upon reaching the Crisis Center. They did not see a medical provider.

76. After being processed through the Crisis Center, all three were placed in Administrative Segregation for about 12 hours.

77. Plaintiffs Rojas, Ayestas, and Lara had visible marks from the officers' abuse over the last nearly 12 hours. Some of their physical injuries remain issues to this day.

78. Rojas had bruising and serious skin lesions on their neck and on their back from the boot burn. They also experience chronic pain in their wrists.

79. Rojas' requests for medical attention were ignored.

80. Lara's wrists were visibly injured, and her right breast was clearly bruised. She suffered other bruising and pain from the force with which she hit the ground. She has lasting pain in her wrists, and her hip regularly locks up, causing her pain.

81. Ayestas had a black eye from her face hitting the toilet. She had bruises and injury to her back and shoulder from having a knee and the full weight of an officer pressed into her back and having her arm twisted as she was slammed into a wall. She still experiences chronic pain in her back and shoulder from the assault.

82. They also had severe emotional reactions to the trauma and harassment.

83. Rojas experiences severe anxiety and panic from the events that transpired.

84. Lara experiences flashbacks, anxiety, trouble sleeping, and phantom physical sensation mimicking the pain she experienced that day. It triggered memories of sexual violence and abuse.

85. Lara requested treatment for PTSD but she never received it. Her trauma is ongoing.

86. Ayestas suffers from flashbacks and night terrors as a result of the incident. She lived in extreme fear after the incident, and her anxiety worsened significantly. She requested treatment for PTSD but was initially denied. She was finally diagnosed with PTSD several months after the incident and receives medication to manage her symptoms.

87. Despite these visible injuries and the trauma, harassment, and humiliation endured at the hands of corrections officers, plaintiffs received no medical or psychological treatment.

88. As soon as they arrived in Administrative Segregation, plaintiffs Rojas, Ayestas, and Lara began asking for a CDCR form 602 to file a grievance about their abuse, treatment, and segregation.

89. They were continually denied access to the grievance forms.

90. Ultimately, plaintiffs Rojas, Ayestas and Lara were able to obtain and file grievances, but guards constantly lost or discarded the grievances. Only Ayestas' grievance was addressed at the second level of review, which resulted in an investigation, the outcome of which was never shared with Ayestas.

91. Ayestas submitted a grievance on or around July 11, 2016, to express her dissatisfaction with the investigation and appeal her grievance to the third level. She did not receive a response.

92. Despite the investigation, the involved guards were never disciplined. Sergeant Collier was promoted to Lieutenant, after the incident.

93. On nearly a daily basis at CCWF, the sexual orientation and gender identity of plaintiffs was and is attacked by officers. Officers accused Rojas of not being a "real man" and comment on their ability to sexually satisfy women. Officers make vulgar references to Rojas' genitalia and attempt to degrade and belittle Rojas with these references.

94. Officers also comment regularly on the sexual preferences of plaintiffs Lara and Ayestas, offering to sexually satisfying them like their "girlfriends" cannot and threatening to use their power over plaintiffs to have sex with them. Combined with the failure to use plaintiffs' names and instead restlessly calling them derogatory epithets, plaintiffs are humiliated and distressed, and live in fear of further physical and sexual abuse.

95. This consistent and near daily treatment is a violation of the Bane Act (Cal. Civ. Code §52.1), the Ralph Act (Cal. Civ. Code §51.7), and CDCR's own policies (*see, e.g.*, 15 C.C.R §3401.6). The secretary of CDCR, defendant Diaz, and the warden, defendant Espinoza, are responsible for ensuring that officers at CCWF are trained to refrain from violations of the law and has ultimate responsibility for disciplining officers who violate those laws. He is also responsible for training staff to refrain from sexual harassment and sexual abuse of prisoners, the right of prisoners to be free from retaliation for reporting harassment and abuse, and how to communicate respectfully and effectively with lesbian, gay, transgender, and gender non-conforming prisoners. (28 C.F.R. §115.31).

96. By allowing the rampant violations of these laws to persist against plaintiffs, defendants Diaz and Espinoza have failed in their obligations to train, supervise and discipline officers including defendant officers.

97. The sexually explicit epithets and threats of sexualized violence that occurred throughout this incident continue to be an every-day occurrence for plaintiffs

who remain incarcerated and other gender non-conforming and queer prisoners at CCWF.

## V. EXHAUSTION OF ADMINISTRATIVE RELIEF

98. All plaintiffs made efforts to exhaust their administrative remedies, but responses by CCWF and CDCR, when provided, have been inadequate.

99. While plaintiffs Rojas, Ayestas and Lara ultimately filed grievances, the grievances were constantly lost or discarded by guards. Only Ayestas' grievance was addressed at the second level of review, which resulted in an investigation, the outcome of which was never shared with Ayestas, and which appears to have accomplished little.

100. Upon information and belief, no guards were disciplined regarding the events of November 11, 2015.

101. Plaintiffs Lara and Ayestas were denied requests for a 602 form to file a grievance against prison staff on November 11 and November 12, 2015.

102. Plaintiff Ayestas submitted a 602 in December 2015. After having to appeal to the second level, she heard that her request was partially granted and that CCWF would investigate the incident.

103. Plaintiff Ayestas, Rojas, and Lara were interviewed as a part of the investigation. However, after some time, it became clear that the prison administration was not going to act as a result of the investigation.

104. On or around July 11, 2016, Ayestas filed a grievance expressing dissatisfaction with the investigation and asking to appeal her granted second level appeal to the third level. Her grievance was not answered.

105. Plaintiff Lara filed three separate grievances complaining of her attack and asking for medical care. Her grievances were all lost or unanswered.

106. On December 2, 2015, Lara filed her first 602 regarding the above-described incidents. She received no response.

107. In March of 2016, Lara filed a second 602 regarding the incident. This grievance too went unanswered.

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 16

108. On September 15, 2016, Lara filed a third 602 and referenced her previous attempts. This third 602 was marked "RECEIVED" by CDCR on October 25, 2016. On October 27, 2016, ten months after first filing a grievance, Lara received a 602 response from CDCR that did not address the substance of her complaint.

109. Lara has since tried to clarify the response and receive a copy of more paperwork, but she has received no response to these requests.

110. Further efforts to exhaust appeals would be futile and are unnecessary given that the appeals process was constructively unavailable to them due to the prison administration's failure to answer multiple appeals.

**FIRST CLAIM FOR RELIEF**
**USE OF EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT**
(By all plaintiffs against defendants Lieutenant Tegtmeyer, Sergeant Collier, Officer Herrera, Officer Reynolds, Officer Trevino in their individual and official capacities.)
(42 U.S.C. § 1983)

111. Plaintiffs incorporate by reference paragraphs 1 through 110 above as though fully set forth herein.

112. By virtue of the foregoing, defendants Lieutenant Tegtmeyer, Sergeant Collier, Officer Herrera, Officer Reynolds, Officer Trevino while under color of law, used excessive and unnecessary force and in doing so acted maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore discipline, causing harm to plaintiffs, in violation of their right under the Eight Amendment of the United States Constitution to be free from cruel and unusual punishment.

**SECOND CLAIM FOR RELIEF**
**SEXUAL ABUSE AND HARASSMENT IN VIOLATION OF THE EIGHTH AMENDMENT**
(By all plaintiffs against defendants Lieutenant Tegtmeyer, Sergeant Collier, Officer Herrera, Officer Reynolds, Officer Trevino, in their individual and official capacities.)
(42 U.S.C. § 1983)

113. Plaintiffs incorporate by reference paragraphs 1 through 112 above as though fully set forth herein.

114. By virtue of the foregoing, defendants Lieutenant Tegtmeyer, Sergeant

Collier, Officer Herrera, Officer Reynolds, Officer Trevino sexually abused and harassed plaintiffs, an act deeply offensive to human dignity and one that serves no legitimate penological purpose. In doing so, defendants demonstrated malicious and sadistic intent to harm plaintiffs, causing plaintiffs harm in violation of their Eighth Amendment right to be free from cruel and unusual punishment.

### THIRD CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
(By all plaintiffs against defendants Lieutenant Tegtmeyer, Sergeant Collier, Officer Herrera, Officer Reynolds, Officer Trevino in their individual and official capacities.)
(42 U.S.C. § 1983)

115. Plaintiffs incorporate by reference paragraphs 1 through 114 above as though fully set forth herein.

116. By virtue of the foregoing, defendants Lieutenant Tegtmeyer, Sergeant Collier, Officer Herrera, Officer Reynolds, Officer Trevino, Officer Dalie, Sergeant Rubalcava, Officer Valencia, Officer Del Toro motivated by plaintiffs' protected activity, retaliated against plaintiffs who were engaged in an effort to access the courts, an act protected under the First Amendment, by assaulting plaintiffs and restricting their access to grievances, thus chilling the plaintiffs' protected speech.

### FOURTH CLAIM FOR RELIEF
### FAILURE TO ADEQUATELY HIRE, TRAIN, SUPERVISE AND DISCIPLINE CORRECTIONS OFFICERS TO REFRAIN FROM VIOLATING CONSTITUTIONAL AND STATUTORYRIGHTS OF PRISONERS
(By all plaintiffs against defendants Diaz and Espinoza in their official capacities.)
(42 U.S.C. § 1983)

117. Plaintiffs incorporate by reference paragraphs 1 through 116 above as though fully set forth herein.

118. By virtue of the foregoing, defendants Diaz and Espinoza are required to train corrections officers and implement policies that protect the constitutional and statutory rights of prisoners, and discipline officers who violate such rights.

119. By virtue of the foregoing, defendants Diaz and Espinoza failed in their obligation to adequately train their corrections officers to refrain from subjecting prisoners to excessive force and sexual abuse and harassment, violations of plaintiffs' constitutional rights, in their obligation to have in place policies that protect the

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 18

constitutional and statutory rights of prisoner, and in their obligation to discipline officers who violate the constitutional and statutory rights of prisoners.

120. By virtue of the foregoing, Diaz and Espinoza are deliberately indifferent to the obvious consequences of their failure to adequately hire, train, supervise, and discipline corrections officers who engage in these constitutional violations. As a result of these inadequacies, corrections officers employed by defendants deprived plaintiffs of their rights, as set forth above.

## XII.  PRAYER FOR RELIEF

121. Wherefore, plaintiffs pray this Court to order relief as follows:

   a. Award prospective injunctive relief in favor of plaintiffs Ayestas, and Lara from future wrongdoing by the defendants;
   b. Award declaratory relief in favor of plaintiffs Ayestas, and Lara;
   c. Award compensatory damages in favor of plaintiffs against all defendants sued in their individual capacities, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;
   d. Award plaintiffs their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;
   e. Such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///

## XIII.  JURY TRIAL DEMANDED

*Rojas v. Diaz,* Case No. 1:17-CV-01514-DAD-JLT
Second Amended Complaint - 19

122. Plaintiffs hereby demand a trial by jury.

Dated: April 4, 2019

                                      SIEGEL, YEE, BRUNNER & MEHTA

                                      By: */s/ EmilyRose Johns*
                                            EmilyRose Johns

                                      Attorneys for Plaintiffs
                                      STACY ROJAS, IVETTE AYESTAS, and
                                      SARAH LARA